UNITED STATES DISTRICT COURT

FOR THE

EASTERN DISTRICT OF MICHIGAN

ROOSEVELT LASHAWN WILLIAMS, (GRANTOR)
Roosevelt-Lashawn of the Williams Family (Trustee)
     Plaintiff(s)

v.

HONORABLE JUDGE: _____

CASE NO.: _____

GRIFOLS PLASMA CENTER, DONNA
(Last Name Unknown), SAMANTHA
(Last Name Unknown)
     DEFENDANT(S)

_____/

### *VIOLATION OF CONSTITUTIONAL RIGHTS TORT CLAIM*

This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1331, as it involves a federal question under 42 U.S.C § 1983. As GRIFOLS PLASMA CENTER as a Private Company alone cannot be sued for violation of Constitutional Rights, GRIFOLS PLASMA CENTER does and/or has Federal Government Contracts with companies such as "BIOMEDICAL ADVANCED RESEARCH DEVELOPMENT AUTHORITY," "FOOD AND DRUG ADMINISTRATION," and "NATIONAL INSTITUTES OF HEALTH," along with international agreements with governments and has and/or is receiving FEDERAL GOVERNMENT FUNDING, said acceptance binds and/or subjects GRIFOLS PLASMA CENTER to FEDERAL LAWS and FEDERAL REGULATIONS which are governed by the ***united States of America Constitution***. Acceptance by the recipient of FEDERAL FUND subjects the recipient to FEDERAL LAWS and REGULATIONS such as TITLE VI of the CIVIL RIGHTS ACT of 1964 and those acts as established by CONGRESS. Venue is proper in this district under 28 U.S.C § 1391 because the events giving rise to this claim occurred in this District.

DEFENDANT(S), DONNA (Last name refused to be provided upon request) and SAMANTHA (Last name refused to be provided upon request) are both in Supervisor positions for GRIFOLS PLASAMA CENTER, located at 1595 Pipestone Road, Benton Harbor, Mi 49022 in the COUNTY of BERRIEN

## *AVERMENT(S) ISPO FACTO*

1) In September of the Year of Our Lord, Two Thousand Twenty-Four, several, due and sufficient notice(s), pertaining to unprofessional behavior, including but not limited to harassment and being subjected to cruel and inhuman treatment was given verbally to said "Supervisor" Donna (last name unknown) and in writing via online review(s). (See Per Se Notum Exhibit A "Online Review and response")

2) In or around the month of the end of May or the beginning of June in the Year of Our Lord Two Thousand Twenty-Five, ROOSEVELT LASHAWN WILLIAMS (hereinafter referred to as the GRANTOR) was subjected to a $80.00 United States currency lost due to an alleged computer network system error. The Grantor wasn't allowed to donate allegedly due to another party possessing the same last four digits in the Social Security Number. The Grantor asked and was told that Grantor could go to another GRIFOLS donating center as long as it was in the Fifty mile radius of address on identification card by the GRIFOLS staff of BENTON HARBOR MICHIGAN, to which the Grantor visited the GRIFOLS located in Kalamazoo Michigan which is 50.2 miles as informed by the staff prior to leaving the GRIFOLS PLASMA CENTER in BENTON HARBOR MICHIGAN.

   i) Upon returning to the GRIFOLS PLASMA CENTER in BENTON HARBOR MICHIGAN, the following week, the Grantor was informed that the Grantor could not donate at the center due to donating at the GRIFOLS PLASMA CENTER in Kalamazoo Michigan and the GRANTOR would have to wait a week before being transferred back into the BENTON HARBOR GRIFOLS PLASMA CENTER network. The Grantor then proceeded to inquire as to why the Grantor would have to drive to the GRIFOLS PLASMA CENTER 50.2 miles to donate when the Grantor is located in the BENTON HARBOR area and there being a GRIFOLS PLASMA CENTER where the Grantor is located as everyone else that is located in the same area is able to use the same location that the Grantor is being denied access to. The Grantor also stated that both Plasma centers are owned by the same company and that the Grantor had not donated within that week in order to show and demonstrate that there was no claim of "cross-donation."

   ii) The following week, the Grantor called the GRIFOLS PLASMA CENTER in BENTON HARBOR MICHIGAN to inquire if the Grantor could be transferred back into the GRIFOLS

BENTON HARBOR PLASMA CENTER over the phone and was informed that the Grantor could not donate at the BENTON HARBOR GRIFOLS PLASMA CENTER and would have to drive 50.2 miles to the GRIFOLS PLASMA CENTER in Kalamazoo Michigan per management decision.

3) On the Eleventh Day of June in the Year of Our Lord Two Thousand Twenty-Five a complaint was filed with GRIFOLS PLASMA CENTER via the "Customer Complaint Hotline" on grounds of discriminatory/retaliatory actions for; i) having filed a complaint against employees of the BENTON HARBOR PLASMA CENTER, ii) discriminatory/retaliatory actions for exercising a constitutional right of freedom of speech, and iii) deprivation of equal protection of rights. Due and sufficient notice of not being allowed to donate at the GRIFOLS PLASMA CENTER in BENTON HARBOR wasn't based on any company policy but personal reasons. Asked the individual at the time of filing the complaint if there was a policy that prohibits donating at another GRIFOLS PLASMA CENTER withing the 50 miles radius and was told that there's no policy, that going to different facilities is discouraged, but there's no policy and to check with the facility to see if they have a specific policy stating such, furthermore informed the individual that the GRIFOLS PLASMA CENTER was refusing to allow the Grantor to donate at the Grantor's location and is being forced to drive 50.2 miles to donate and that the Grantor had suffer a monetary loss of eighty U.S currency dollars due to company computer system issues. The individual on the phone informed the Grantor, as per the BENTON HARBOR GRIFOLS PLASMA CENTER staff instructions, to continue to donate at the GRIFOLS PLASMA CENTER in Kalamazoo and to check with the GRIFOLS PLASMA CENTER to see if they had a policy pertaining to the issue raised. (Referencing GRIFOLS PLASMA CENTER COMPLAINT HOTLINE COMPLAINT NO. C 195860).

4) On the Fourteenth Day of June in the Year of Our Lord Two Thousand Twenty-Five, per the GRIFOLS PLASMA CENTER CUSTOMER COMPLAINT HOTLINE, an attempt to, in a non-polemic/non-combative and civilized manner, resolve said issues was made via; i) requesting the name of the managing staff that made said decision to violate said rights; ii) requesting a copy any said policy that prohibits donating at other GRIFOLS PLASMA CENTERS within a Fifty mile radius; and iii) requesting to be placed back into the BENTON HARBOR GRIFOLS PLASMA CENTER system. Samantha (Last name unknown) responded by saying to come back Monday to talk to her supervisor. Preserving evidence, hereby referencing said video recording for that day to demonstrate and support that at no time was there any body language or activity to support any claims of aggression or otherwise, furthermore will show upon existing the premises being done with a smile.

5) On the Sixteenth Day of June in the Year of Our Lord Two Thousand Twenty-Five, per Samantha (Last name Unknown) instructions, returned to the BENTON HARBOR GRIFOLS PLASMA CENTER in an attempt to resolve said issues by speaking with said supervisor. Upon speaking with said Supervisor Donna (Last name unknown), Donna stated that the Grantor had been permanently deferred due to requesting, as allowed via TITLE 5 U.S.C § 552 and MICHIGAN COMPLIANCE LAW (MCL) 15.23(ies) being enforced along with the name(s) of the individual enforcing alleged said policy, and ii) exercising peacefully said protected

rights of freedom of speech, right to redress of grievance, and the right of the application of the equal protection clause, as being acts of rudeness. (Referencing video recording of #4 as evidence to demonstrate and support falsifying of document(s) and defamation of character).

### *ARGUMENT I*

### *I. DID THE DEFENDANT(S) VIOLATE THE PLAINTIFF'S RIGHTS AS SECURED VIA AMENDMENT I of united States of America Constitution.*

*PLAINTIFF SAYS: YES*
*DEFENDANT SAYS: _____*

*The First Amendment of the U.S. Constitution protects freedom of speech and expression, stating that "Congress shall make no law... abridging the freedom of speech, or of the press". This protection extends to a wide range of expression, including both cognitive and emotive speech. In essence, the First Amendment protects your right to express yourself, whether you're conveying factual information or expressing your emotions. This protection is crucial for a healthy democracy and ensures that a wide range of voices and perspectives can be heard.*

"The Court said that freedom of expression Is a "powerful medicine" in a democratic society, and trifling too much with the manner of that expression inherently limits the desired expression. The Court could not "indulge the facile assumption that one can forbid particular words without also running a substantial risk of suppressing ideas in the process" especially when "words are often chosen as much for their emotive as their cognitive force". *Cohen v. California, 403 U.S. 15 (1971)*

Retaliation claims can arise from various government actions, including arrests, prosecutions, and other adverse employment or administrative decisions.

"Mahanoy Area High School student B. L. failed to make the school's varsity cheerleading squad. While visiting a local convenience store over the weekend, B. L. posted two images on Snapchat, a social media application for smartphones that allows users to share temporary images with selected friends. B. L.'s posts expressed frustration with the school and the school's cheerleading squad, and one contained vulgar language and gestures. When school officials learned of the posts, they suspended B. L. from the junior varsity cheerleading squad for the upcoming year. After unsuccessfully seeking to reverse that

punishment, B. L. and her parents sought relief in federal court, arguing inter alia that punishing B. L. for her speech violated the First Amendment. The District Court granted an injunction ordering the school to reinstate B. L. to the cheerleading team. Relying on **_Tinker v. Des Moines Independent Community School Dist_., _393 U. S. 503_**, to grant B. L.'s subsequent motion for summary judgment, the District Court found that B. L.'s punishment violated the First Amendment." <u>**Mahanoy Area Sch. Dist.**</u> **v.** <u>**B.L.**</u>**, 141 S.Ct. 2038 (2021)**.

Clearly any kind of exercising ones rights of freedom of speech via questioning of staff behavior and or having any awareness of inappropriate conduct and exercise of rights and laws is considered as rudeness and polemic and non-existing rights as it is believed that one is to accept what is said and shut-up is the mentality of GRIFOLS and GRIFOLS STAFF as if the XIV AMENDMENT of the **_united States of America Constitution_** has not done away with slavery.

## _II. DOES THE DEFENDANT(S) ACTION(S) CONSTITUTE AS RETALIATION AND VIOLATE CONSTITUTIONAL RIGHT(S)_

### _PLAINTIFF(S) SAYS: <u>YES</u>_
### _DEFENDANT(S) SAYS:_

42 U.S. Code § 12203 - Prohibition against retaliation and coercion

(a)RETALIATION

No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

(b)INTERFERENCE, COERCION, OR INTIMIDATION

It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter

*Jackson* v. *Birmingham* **Bd. of Educ. (2005):** This case established that retaliation is an intentional act and a form of discrimination. The Supreme Court determined that if an employer takes action against an employee because of their protected activity, it can be considered retaliation. ***Jackson v. Birmingham Bd. Of Ed., 544 U.S. 167 (2005)***

***McDonnell Douglas Corp.* v. *Green (1973)***: This case established a burden-shifting framework for evaluating claims of employment discrimination under Title VII. Under this framework, once a plaintiff establishes a prima facie case of discrimination, the employer must articulate a legitimate, non-discriminatory reason for the adverse action. If the employer fails to provide such a reason, or if the plaintiff demonstrates that the employer's stated reason is a pretext for discrimination, the employer may be found liable. While this case specifically addresses discrimination, the principles regarding the employer's burden to articulate a legitimate reason can be relevant in retaliation cases as well. ***McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973)**

***First Amendment***: This amendment, protecting fundamental freedoms like speech and assembly, is a primary basis for retaliation claims when the government takes adverse action against individuals for exercising these rights. To prove First Amendment retaliation, one must show they engaged in protected activity, faced adverse government action that would discourage such activity, and that there was a causal link between the two.

***Sixth Amendment***: While not explicitly mentioning retaliation, this amendment, which guarantees rights for criminal defendants, implies a right for witnesses to be free from retaliation that would hinder their participation in legal proceedings.

***Supremacy Clause***: This clause (Article Six) establishes federal law as supreme, which can be relevant when federal anti-retaliation laws conflict with state laws.

Additionally, numerous federal laws beyond the Constitution address retaliation, particularly in areas like employment discrimination. Understanding retaliation claims involves the Constitution, federal statutes, and court decisions.

A strong retaliation case is built on three key elements: evidence of protected activity, evidence of adverse employment action, and a clear causal connection between the two. This means demonstrating that an employee engaged in a protected activity (like filing a complaint about discrimination), that the employer took some negative action against them (like termination or demotion), and that there's a strong link between these two events.

### III. DOES THE DEFENDANT(S) ACTION(S) VIOLATE THE XIV AMENDMENT of the united States of America Constitution?

**PLAINTIFF(S) SAYS: YES**
**DEFENDANT(S) SAYS:**

The Fourteenth Amendment's Equal Protection Clause prevents states from denying citizens equal protection under the law, meaning they cannot arbitrarily discriminate against individuals or groups by denying them the same services offered to others. Several Supreme Court cases demonstrate this principle in action.

Shapiro v. Thompson (1969): This case addressed a state law that denied welfare benefits to new residents who had not lived in the state for at least one year. The Court held that this waiting period violated the Equal Protection Clause because it infringed upon the right to travel and created an arbitrary distinction between new and established residents. ***Shapiro v. Thompson, 394 U.S. 618 (1969)***

While the Equal Protection Clause itself applies only to state and local governments, the Supreme Court held in **Bolling v. Sharpe (1954)** that the Due Process Clause of the Fifth Amendment nonetheless requires equal protection under the laws of the federal government via reverse incorporation.

To establish an Equal Protection violation, a plaintiff must prove purposeful discrimination directed at an identifiable or suspect class.

As there was [n]or is there any legitimate [n]or lawful reason(s) to send the Grantor to the Kalamazoo GRIFOLS PLASMA CENTER, while allowing others in

the same area access, said act clearly denies equal protection while demonstrating discriminatory and retaliatory action(s).

## IV. DID THE DEFENDANT(S) STATEMENT CAUSE DEFAMATION OF CHARACTER

### PLAINTIFF(S) SAYS: YES
### DEFENDANT(S) SAYS:

Defamation is the act of damaging a person's reputation by making false and harmful statements about them, either in writing (libel) or verbally (slander). To be considered defamation, these statements must be communicated to a third party and cause harm to the person's reputation. Public figures face a higher burden of proof, needing to show that the statement was made with "actual malice," meaning the speaker knew it was false or acted with reckless disregard for the truth.

**New York Times Co.** v. **Sullivan (1964)**: This landmark case established the "actual malice" standard, requiring public officials to prove that defamatory statements were made with knowledge of their falsity or with reckless disregard for the truth. This significantly raised the bar for public officials seeking to sue for defamation. **New York Times Co. v. Sullivan, 376 U.S. 254 (1964)**

**Milkovich v. Lorain Journal Co. (1990)**: This case addressed the distinction between statements of fact and opinion in defamation law. The Supreme Court held that even statements labeled as opinion can be actionable if they imply false assertions of fact. **Milkovich v. Lorain Journal, 497 U.S. 1 (1990)**

**Gertz** v. **Robert Welch, Inc. (1974):** The Court held that private individuals, unlike public officials, do not have to prove actual malice to recover damages for defamation. They only need to demonstrate negligence. **Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)**

**Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc. (1985) This** case clarified that private plaintiffs can recover presumed or punitive damages without a showing of actual malice when the defamatory statement does not involve a matter of public concern. **Dun & Bradstreet, Inc. v. Greenmoss Builders, 472 U.S. 749 (1985)**

*Anderson v. Liberty Lobby Inc. (1986): The* Court addressed summary judgment standards in defamation cases, emphasizing that the plaintiff must demonstrate a genuine issue of material fact regarding actual malice to proceed to trial. ***Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)***

These cases highlight the complexities of defamation law and the importance of the First Amendment in protecting free speech, even when it involves potentially harmful statements.

## PERSEVERING A CLAIM OF VIOLATION OF THE PRIVACY ACT OF 1974

***Katz v. United States** (1967)*: This landmark case established that the Fourth Amendment protects individuals' reasonable expectations of privacy, not just physical trespass. This principle is relevant to understanding the privacy implications of surveillance cameras. ***Katz v. United States, 389 U.S. 347 (1967)***

Donors are not allowed to use there's cameras to take pictures [n]or record while making donations, which could only be assumed that said reason(s) is for security and privacy, however there are video cameras being used by GRIFOLS PLASMA CENTER. The law requires notice to be given where one has an expectancy of privacy.

## CONCLUSION

The Plaintiff(s) has a fundamental right to freedom of speech to which cannot be infringed upon in any form to include retaliation. The filing of said complaint with the GRIFOLS PLASMA CENTER of being retaliated and discriminated against is within the perimeters of **5 U.S.C § 2302 (b)(8) (WHISTLEBLOWER'S PROTECTION ACT OF 1989)** and as Grantor does receive Disability, garners the protection and application of **42 U.S.C § 12101 (AMERICANS WITH DISABILITY ACT (ADA)).** There being no legal [n]or lawful enforceable policy to support or justify management action(s), [n]or claims of "cross-donating," as all donating activity(ies) are logged via the GRIFOLS PLASMA CENTER kiosk system, clearly demonstrate and satisfies the three key elemental requirements to establish the acts were done out of retaliation, being discriminatory, and with malice intent.

Satisfying the standard as set forth in ***Anderson v. Liberty Lobby Inc. (1986)***, can, will, and has proved that, via the *I Amendment* of the *united States of America Constitution,* there being a right to freedom of speech. The DEFENDANT(S) statement of being "rude" being based on the requesting of: a) the names of management making said decision to deny

access to the BENTON HARBOR GRIFOLS PLASMA CENTER and b) copy(ies) of "policy" being used and/or enforced is a matter of opinion that does not serve a Public interest to which said action(s) to deny access was based on a protected right of freedom of speech and nothing else, was only used in retaliation and to prevent further access.

Without the intent of slandering any parties t this said action, to establish bias and motive to/of discrimination on the bases of gender and/or race, the Plaintiff calls to this HONORABLE COURT'S attention, that the Plaintiff is a male of African American descent and the DEFENDANT(S) are Caucasian females, furthermore it has been mentioned by other BENTON HARBOR GRIFOLS PLASMA CENTER employees that one of the DEFENDANT(S) is involved in a same sex relationship.

As the STATE [n]or can GOVERNMENT deny anyone equal protection of the law(s) or rights secured via the *united States of America Constitution*, the STATE [n]or the GOVERNMENT cannot authorize, allow, [n]or ignore any acts that does violate the equal protection clause of the [n]or any other part of the *united States of America Constitution*, as a "*OATH*" to serve, defend, enforce, and/or protect the CONSTITUTION of the *united States of America* has been taken, to which the following requested RELIEF MUST be granted due to there being no reason to send the Grantor 50.2 miles to donate while other in the same area were and/or are being allowed to donate in the same area where the Grantor is being denied access to.


## *RELIEF REQUESTED*


The herein Complaint involves issues of violation of CONSTITUTIONAL rights to which pursuant to Article III § I of the united States of America Constitution, this being a Article III COURT, gives this HONORABLE COURT Authority/jurisdiction to GRANT the herein sought RELIEF. Satisfying 28 U.S.C. APP Fed. R. Civ. Rule 8.

   A). As the DEFENDANT(S) action(s) were done out of retaliation and discriminatory with malice intent and unsupported, effective immediately that all responsible DEFENDANT(S) be terminated and banned from any further employment at any PLASMA centers;

   B).  A Reparative Injunction be issued to remove any and all permanent deferrals be removed and Plaintiff be allowed access;

   C). Punitive Damages in said amount of $120,000 U.S. Currency per
         i). Person given notice/Involved
        ii). Constitutional Violation
       iii). Days Defered
       iv). Miles Traveled

D). Compensatory Damages allowed by law.

Along with any other remedies this HONORABLE COURT deems just and fit, to include but not limited to all court cost and fees.

All Rights Reserved
Signature  (Trustee

EXHIBIT(S)

A



3:04  ·  77

← **R Williams**
Local Guide · 16 reviews

★★★★★ 9 months ago

Jerrica was rude and had a very uncomfortable and unpleasant disposition in her demeanor to the point where  boycotting comes to mind. Furthermore, everyone reading this review, you have a Constitutional Right not to be subjected to disrespectful treatment that could cause emotional distress to which is grounds for civil actions on the grounds of cruel and usual and inhumane treatment as a class action litigation. Don't allow someone to disrespectful you in a professional environment. Speak to and let's take the legal available actions.

♡  Press and hold to react


**Grifols Freedom Plasma Donation C...**
10 months ago

Thank you for providing your feedback and



---



3:00  ·  78

← Your reviews and update...

R

**Add a highlight from a recent visit**

📷 Post a photo update

---

Your review or update

**R Williams**
Local Guide · 16 reviews                  ⋮

★★★★★  9 months ago

Jerrica was rude and had a very uncomfortable and unpleasant disposition in her demeanor to the point where  boycotting comes to ... more

♡  Press and hold to react


**Grifols Freedom Plasma Donation C...**
10 months ago

Thank you for providing your feedback and letting us know about this issue, R. We set a high standard for ourselves and are... more



